```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DENISE MORGAN RAMSEY,

                    Plaintiff,
                                              MEMORANDUM & ORDER
          -against-                           18-CV-3064 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Howard D. Olinsky, Esq.
                    Olinsky Law Group
                    250 South Clinton Street, Suite 210
                    Syracuse, New York 13202

For Defendant:      Arthur Swedloff, Esq.
                    United States Attorney's Office
                    Eastern District Of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
```

SEYBERT, District Judge:

  Plaintiff Denise Morgan Ramsey ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of her application for Social Security Disability Insurance Benefits. (Compl., D.E. 1, ¶¶ 1-2.) Presently pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., D.E. 10; Comm'r Mot., D.E. 19.) For the following reasons, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.

BACKGROUND[1]

On September 29, 2015, Plaintiff completed an application for disability insurance benefits alleging that since February 24, 2015, spinal impairment, arthritis, asthma, and anxiety rendered her disabled. (R. 251-56.) After Plaintiff's claim was denied (R. 204-207), she requested a hearing before an Administrative Law Judge ("ALJ") (R. 187-88). On June 14, 2017, Plaintiff, accompanied by a representative, appeared for a hearing before the ALJ. (R. 139-71.) Maria Rivero, M.D., the non-examining medical expert and an internal medicine and geriatrics physician, and Amy Leopold, a vocational expert, also testified at the hearing. (R. 159-70.)

In a decision dated July 21, 2017, the ALJ found that Plaintiff was not disabled. (R. 12-20.) On March 26, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (R. 1-6.)

Plaintiff initiated this action on May 24, 2018 (see Compl.) and moved for judgment on the pleadings on November 19, 2018. On May 16, 2019, the Commissioner filed a cross-motion for

---

[1] The background is derived from the Administrative Fecord ("R") filed by the Commissioner on February 9, 2018. For purposes of this Memorandum and Order, familiarity with the Administrative Record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

judgment on the pleadings. Plaintiff filed her opposition to the Commissioner's motion on May 31, 2019. (Pl. Opp., D.E. 23.)

DISCUSSION

I. Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether the plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II. The ALJ's Decision

Initially, the ALJ found that Plaintiff meets the insured-status requirements of her claim through December 31, 2019. (R. 14.) Next, the ALJ applied the familiar five-step disability analysis and concluded that Plaintiff was not disabled from February 24, 2015, the alleged disability-onset date, through July 21, 2017, the date of the ALJ's decision. (R. 14-20); see 20 C.F.R. § 404.1520. At steps one through three, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date, (R. 14); (2) Plaintiff had severe impairments consisting of degenerative disc disease and arthritis

(R. 14-15)[2]; and (3) Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations (R. 15-17). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except [she] can only occasionally bend, stoop, kneel, crouch and crawl" and that she "must avoid excessive exposure to airborne allergens and environmental irritants." (R. 17-18.)

Proceeding to steps four and five, the ALJ found that while (4) Plaintiff was unable to perform her past relevant work as a veterinary technician, (R. 18-19), (5) considering her RFC, age, education, and work experience, Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy (R. 19-20). As a result, the ALJ determined that Plaintiff was not disabled. (R. 20.)

A. The ALJ's RFC Determination

In deciding Plaintiff's RFC, the ALJ reviewed the treatment notes of Dr. Adam Schneider, a neurologist and Dr. Amit Sharma, a pain management physician. (R. 14, 17-18.) The ALJ also considered the opinions of Maria Herrera, M.D., Plaintiff's treating physical medicine and rehabilitation physician, (R. 478-83), Jamie Skurka, D.C., Plaintiff's treating chiropractor, and

---

[2] The ALJ determined that Plaintiff's mental impairment of anxiety was not severe. (R. 15.)

4

the testimony of non-examining medical expert Dr. Maria Rivero, an internal medicine and geriatrics physician. (R. 18, 159.)

Dr. Herrera and Dr. Skurka both provided medical source statements regarding Plaintiff's ability to do physical work-related activities and indicated that Plaintiff was limited in the hours she could stand, sit, and walk in an eight-hour work day. (R. 335, 367-71 (Dr. Skurka); R. 478-83 (Dr. Herrera).) The ALJ assigned Dr. Herrera's and Dr. Skurka's opinions "little weight" because the record did not support their "extreme" limitation findings. (R. 18.) Additionally, the ALJ found Dr. Herrera's opinions "far in excess of what would reasonably be expected from the objective medical evidence." (R. 18.) The ALJ also discredited Dr. Skurka's opinion as based upon Plaintiff's subjective allegations and provided "for the purposes of assisting the [Plaintiff] in obtaining disability benefits, rather than painting an accurate picture of her functional capabilities." (R. 18.)

Dr. Rivero telephonically testified at the hearing to Plaintiff's "severe impairments" and stated that Plaintiff tried "pretty aggressive treatment with epidural steroid injection, medi[c]al nerve ablations which are for the section B, [and] chiropractic treatment." (R. 160.) Although Dr. Rivero testified that she did not "have many of the records" cited by the ALJ at the hearing (R. 160), Dr. Rivero opined that Plaintiff can operate

5

at a "light level [ ] with a few additional restrictions." (R. 163-64.) Dr. Rivero's testimony referred to various treatment notes (R. 160-63) and referenced Dr. Skurka's medical source statement.[3] The ALJ assigned "great weight" to Dr. Rivero's testimony because Dr. Rivero "reviewed the entire record and is considered an expert in the field." (R. 18.)

III. Analysis

Plaintiff advances two primary arguments: (1) The ALJ improperly assigned "little weight" to Dr. Herrera's opinion with respect to the effect of Plaintiff's physical impairments on her work capacity as unsupported by the record (Pl. Br., D.E. 11, at 10-11), and (2) the ALJ erred by discounting and assigning "little weight" to the opinion of Dr. Skurka, Plaintiff's chiropractor, on the effect of Plaintiff's physical impairments on her work capacity as unsupported by medical evidence, based on Plaintiff's subjective complaints, and finding that Dr. Skurka's opinion served only to assist Plaintiff in obtaining disability benefits. (Pl. Br. at 11-13.)

The Commissioner contends that the ALJ gave proper weight to these opinions and that substantial evidence supports the ALJ's RFC findings because (1) Dr. Herrera's opinion is overly

---

[3] It is not entirely clear whether Dr. Rivero completely disregarded Dr. Skurka's medical source statement because she testified "[t]here is a medical source statement <u>but it's from a chiropractor</u> . . . ." (R. 163) (emphasis added).

6

restrictive and inconsistent with medical evidence (Comm'r Br., D.E. 20, at 21-23), and (2) Dr. Skurka's opinion is based on Plaintiff's subjective complaints, inconsistent with substantial evidence in the record, and that Dr. Skurka is not considered an "acceptable medical source" and is not entitled to the weight of an acceptable medical source (Comm'r Br. at 24-25).

A. Dr. Herrera

The Court applies the treating physician rule because Plaintiff filed her claim before March 27, 2017. See 20 C.F.R. § 404.1527. However, "before evaluating the weight assigned to a treating physician, the Court must assess whether the ALJ satisfied his threshold duty to adequately develop the record before deciding the appropriate weight of a treating physician's opinion." Khan v. Comm'r of Soc. Sec., No. 14-CV-4260, 2015 WL 5774828, at *14 (E.D.N.Y. Sept. 30, 2015) (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008); Collins v. Comm'r of Soc. Sec., No. 11-CV-5023, 2013 WL 1193067, at *9-10 (E.D.N.Y. Mar. 22, 2013); Pabon v. Barnhart, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003)) (internal parentheticals omitted). The "duty to develop the record applies even when the claimant is represented by counsel." Id. (citing Johnson v. Astrue, 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011)).

Dr. Herrera,[4] a physical medicine and rehabilitation physician, opined in a medical source statement dated June 6, 2017, that, among other things: (1) Plaintiff can occasionally lift and carry up to 10 pounds (R. 478); (2) Plaintiff can sit for up to three hours and stand and walk for up to two hours in an in an eight-hour working day (R. 479); (3) Plaintiff can stand and walk for 20-30 minutes at one time without interruption (R. 479); (4) Plaintiff requires the use of a medically necessary cane to ambulate and that she can walk 300 feet without a cane and can also carry small objects while using a cane[5] (R. 479); and (5) Plaintiff cannot climb ladders or scaffolds, balance, kneel, crouch, or crawl (R. 481). Dr. Herrera also indicated that Plaintiff will be absent from work "10-15 [days] or more" and that Plaintiff will need "4-5" unscheduled breaks during an 8-hour work day. (R. 482.) In support of her opinions, Dr. Herrera cited to Plaintiff's cervical and lumbar impairments, spondylosis, spinal

---

[4] Plaintiff argues that Dr. Herrera began treating Plaintiff on or about January 2015. (Pl. Br. at 6.) However, the record is not clear as to when Dr. Herrera started treating Plaintiff because Dr. Herrera's medical source statement indicates that Plaintiff's limitations first presented "about January 2015" and is otherwise silent as to the duration of treatment. (R. 483.)

[5] The ALJ indicated that Plaintiff "is able to ambulate without an assistive device" (R. 18) contrary to Dr. Herrera's medical source statement that states Plaintiff uses a cane to ambulate (R. 479) and Plaintiff's testimony that she uses an assistive device to ambulate (R. 152). Although not clear, there is medical evidence that Plaintiff's cane use began after a May 2017 hip arthroscopy. (R. 479.)

8

stenosis "on MRI," tenderness, radicular symptoms, hip pain, and labrum tear. (R. 478-82.)

The ALJ assigned Dr. Herrera's opinion "little weight" because it is "far in excess of what would reasonably be expected from the objective medical evidence" and because "[t]here is simply no support in the record for such extreme limitations." (R. 18.)

First, the ALJ's finding that Dr. Herrera's opinion was "far in excess of what would reasonably be expected from the objective medical evidence," (R. 18), constitutes "an improper substitution by the ALJ of [his] own lay opinion in place of medical testimony." Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013).

Second, the Court finds that the ALJ failed to properly develop the record before assigning "little weight" to the opinion of Dr. Herrera. Notwithstanding the revised 20 C.F.R. § 404.1520b, "it may be incumbent upon the ALJ to re-contact medical sources in some circumstances." Khan, 2015 WL 5774828, at *14. In applying 20 C.F.R. § 404.1520b, courts in this Circuit hold that where additional information is needed regarding the opinion of a treating physician, the ALJ should contact the treating source "for clarification and additional evidence." McClinton v. Colvin, No. 13-CV-8904, 2015 WL 6117633, at *23 (S.D.N.Y. Oct. 16, 2015) (collecting cases); but see Vanterpool v. Colvin, No. 12-CV-8789, 2014 WL 1979925, at *17 (S.D.N.Y. May 15,

9

2014) ("[b]ecause the ALJ did not reject [the treating physician's] opinion due to gaps in the record, he was not required to contact the physician for further information or clarification").

Importantly, 20 C.F.R. § 404.1567(b) provides that "light work" involves, among other things, a job that requires "<u>a good deal of walking or standing</u>" and that "[i]f someone can do light work, we determine that [ ] she can also do sedentary work, <u>unless there are additional limiting factors such as . . . inability to sit for long periods of time</u>." (emphasis added). At Plaintiff's hearing, a vocational expert testified that an individual in Plaintiff's position with generally her RFC could perform "light positions," such as a "mail clerk," "cashier," or "office helper." (R. 166-67.) However, the vocational expert did not know whether Plaintiff would be able to perform those jobs, including sedentary jobs, if Plaintiff could only "sit for four hours and stand and walk for four hours." (R. 168-69.) Further, the vocational expert opined that it would "not be tolerated" if Plaintiff were absent ten-fifteen days per month and if Plaintiff took "frequent unscheduled breaks . . . where she would have to sit . . . and lie down." (R. 169-70.) Thus, "a finding regarding [Plaintiff's ability to stand and sit for extended periods of time] is essential in determining whether she can perform work in the national economy." <u>Newson v. Comm'r of Soc. Sec.</u>, No. 17-CV-2918, 2019 WL 6173400, at *2 (E.D.N.Y. Nov. 20, 2019).

Here, Dr. Herrera and Dr. Skurka were the only two treating providers to address Plaintiff's physical limitations, including Plaintiff's capacity to sit, stand, and walk for extended periods of time.[6] However, the ALJ assigned "great weight" Dr. Rivero's testimony that Plaintiff could perform "light work" with certain restrictions (R. 18, 163-64), even though Dr. Rivero did not "have many of the records" referenced by the ALJ at the hearing (R. 160).[7] Dr. Rivero did not opine on, or otherwise assess, Plaintiff's capacity to sit or stand for prolonged periods of time. (R. 18.) At best, Dr. Rivero's testimony was vague regarding the impact of Plaintiff's various impairments on her daily life. (See R. 163-65 (explaining that degenerative disc disease is "highly variable" and that the success of sacroiliac joint injections "depends" and is "kind of variable" and that Plaintiff may have had "partial improvement").)

---

[6] Dr. Syeda Asad, the consultative examiner, also submitted a report. (R. 330-34.) However, it does not appear that the ALJ considered or assigned any weight to Dr. Syed's examination notes or opinion.

[7] It is unclear whether Dr. Rivero reviewed all available evidence and simply did not have certain documents at her immediate disposal during the hearing or, more concerning to the Court, that Dr. Rivero did not have all available evidence and still opined on Plaintiff's functional capacity to perform light work. This disparity, coupled with the "great weight" afforded to Dr. Rivero's testimony, underscores the Court's finding that remand is necessary to further develop the record.

11

In making the RFC determination, the ALJ also reviewed, considered, and cited to the notes of Dr. Sharma, Plaintiff's treating physician and interventional pain management doctor. (R. 17-18.) Dr. Sharma consistently logged Plaintiff's neck and back pain (see, e.g., R. 51-52, 63-66, 78, 387, 401), multiple "radiofrequency ablation" procedures (see, e.g., R. 51, 67, 421-22), and sacroiliac joint injections (see, e.g., R. 55, 66, 71-72). There is no medical source statement from Dr. Sharma regarding Plaintiff's ability to do work-related functions. Further, Dr. Sharma's treatment notes do not opine on Plaintiff's functional limitations, including Plaintiff's ability to stand and sit for prolonged periods of time.[8] It is therefore unclear whether Dr. Herrera's opinion is internally inconsistent and/or consistent with the various treating-physician's medical notes.

Indeed, the Court finds that in making the RFC determination, the ALJ likely relied on medical records that "record, diagnose, and address symptoms" rather than records that "assess functional abilities." Newson, 2019 WL 6173400, at *2

---

[8] The ALJ briefly referred to one of Dr. Schneider's treatment notes in the RFC analysis. (R. 17.) Dr. Eric Fanaee, who treats Plaintiff for pain management and prescribes Plaintiff medical marijuana, also submitted treatment notes. (See, e.g., 435-38.) The ALJ did not consider Dr. Fanaee's treatment notes in the RFC analysis. Nonetheless, neither Dr. Schneider's nor Dr. Fanaee's records provide insight into Plaintiff's functional capabilities.

12

(internal quotation marks and citation omitted); Pensiero v. Comm'r of Soc. Sec., No. 19-CV-00279, 2019 WL 6271265, at *4 (D. Conn. Nov. 25, 2019) ("[W]hen the treatment notes and test results from the claimant's treating physicians do not assess how the claimant's symptoms limit [her] functional capacities, remand is warranted.") (alterations in original) (internal quotation marks and citation omitted). Given Plaintiff's aggressive pain management and treatment plan, Dr. Herrera's opinion, and Plaintiff's testimony, the ALJ had an obligation to attempt to clarify any alleged inconsistency between Dr. Herrera's conclusion that Plaintiff could only sit for three hours and stand for two hours out of an eight-hour work day and the evidence in the record, including evidence regarding Plaintiff's "partial improvement." (See R. 164-65); see also Corrigan v. Comm'r of Soc. Sec. Admin., No. 18-CV-5686, 2019 WL 5212850, at *5 (E.D.N.Y. Oct. 16, 2019); Delacruz v. Astrue, No. 10-CV-05749, 2011 WL 6425109, at *15 (S.D.N.Y. Dec. 1, 2011), R&R adopted, 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011); Newson v. Comm'r of Soc. Sec., No. 17-CV-2918, 2019 WL 6173400, at *3 (E.D.N.Y. Nov. 20, 2010) ("It is the ALJ's job to grapple with inconsistencies and develop an incomplete record further.") (citation omitted); Murphy v. Saul, No. 17-CV-1757, 2019 WL 4752343, at *7 (E.D.N.Y. Sept. 30, 2019).

Therefore, remand is appropriate to enable the ALJ to fully develop the record regarding Dr. Herrera's opinion on

13

Plaintiff's physical impairments on her ability to work because Dr. Rivero's opinion does "not provide substantial evidence"[9] to support the ALJ's finding and "[a]t a minimum, the ALJ likely should have contacted [Dr. Herrera] and sought clarification of [her] report." Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013); see also Christiansen v. Colvin, No. 15-CV-2932, 2016 WL 4384722, at *8 (E.D.N.Y. Aug. 15, 2016).

## B. Dr. Skurka

Dr. Skurka, Plaintiff's treating chiropractor, submitted a physical capacity questionnaire, dated December 4, 2015 (R. 335), and a physical capacities evaluation, dated January 12, 2016 (R. 367-72). Dr. Skurka opined that Plaintiff was unable to stand and/or walk for up to two hours and could not sit for six hours in an eight-hour workday (R. 335), and that Plaintiff could sit for 20 minutes and stand and walk for 15-20 minutes before having to change positions in an eight-hour work day (R. 368). The ALJ assigned this opinion "little weight"

---

[9] The ALJ's reliance on Dr. Rivero's opinion is "problematic." Murphy, 2019 WL 4752343, at *4. "'The medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight.'" Id. (quoting Roman v. Astrue, No. 10-CV-3085, 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012)); Minsky v. Apfel, 65 F. Supp. 2d 124, 138 (2d Cir. 1999) ("'[Medical] advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant.'") (quoting Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990).

14

because, among other reasons, "[p]hysical findings do not support such extreme limitations." (R. 18.)

Under 20 C.F.R. § 404.1527, the ALJ has discretion to determine how much weight to afford to a medical source that is not an "accepted" medical source. As a chiropractor, Dr. Skurka is not an accepted medical source under 20 C.F.R. § 404.1513. However, a chiropractor is considered an "'other source,' whose opinion should be considered" when assessing the "severity and functional limitations" of an alleged impairment. Losquadro v. Astrue, No. 11-CV-1798, 2012 WL 4342069, at *14 (E.D.N.Y. Sept. 21, 2012) ("These medical sources, such as chiropractors, are important in the medical evaluation because they 'have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.'") (quoting SSR 06-03p).

The Second Circuit has held that "under no circumstances can the regulations be read to require the ALJ to give controlling weight to a chiropractor's opinion." Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995) (emphasis in original). Rather, the "ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him." Id. Consequently, the ALJ may properly exercise discretion by assigning less weight to Dr. Skurka if the opinion is unsupported by substantial evidence or based on Plaintiff's "subjective

15

complaints." See Lewis v. Colvin, 548 F. App'x 675, 678 (2d Cir. 2013). (R. 18.)

However, for the same reasons articulated above with respect to Dr. Herrera, substantial evidence does not support the ALJ's finding that "[p]hysical findings do not support [Dr. Skurka's] extreme limitations." (R. 18.) See discussion, supra. Specifically, while the ALJ is under no obligation to assign Dr. Skurka's opinion controlling weight, the ALJ's decision to assign "less weight" to Dr. Skurka's opinion as unsupported by the evidence prior to developing the record, resulted in a gap in the medical evidence. Because Plaintiff's treating physicians' examination notes do not provide additional insight, remand is appropriate to further develop the record.

Finally, it was improper for the ALJ to find that Dr. Skurka provided an opinion "for the purposes of assisting the claimant in obtaining disability benefits." (R. 18.) The ALJ "'may not assume that doctors routinely lie in order to help their patients collect disability benefits.'" Scott v. Astrue, No. 08-CV-0910, 2010 WL 2640531, at *9 (W.D.N.Y. June 11, 2010), R&R adopted, 2010 WL 2640539 (W.D.N.Y. June 29, 2010) (quoting Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995)); Rivera v. Berryhill, No. 17-CV-7177, 2019 WL 692162, at *12 (S.D.N.Y. Jan. 28, 2019) ("Mere speculation of impropriety is not an adequate justification for discounting a treating physician's opinion.") (collecting

16

cases); Soto-Rivera v. Comm'r of Soc. Sec., No. 17-CV-6675, 2019 WL 2718236, at *5 (W.D.N.Y. June 28, 2019) (describing ALJ's finding that a treating-physician's opinion was provided to "assist a patient with whom he or she sympathizes" as gratuitous and "unfairly denigrates the entire medical profession."). If the ALJ harbored doubts as to the veracity of Dr. Skurka's opinion and findings, it was incumbent upon the ALJ to contact Dr. Skurka for clarification and/or additional treatment notes.

CONCLUSION

In light of these findings, the Court need not address Plaintiff's additional contentions. Plaintiff may address those issues on remand.

Accordingly, Plaintiff's motion (D.E. 10) is GRANTED and the Commissioner's motion (D.E. 19) is DENIED. This matter is REMANDED for proceedings consistent with this Memorandum and Order.

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.


SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: December __12__, 2019
Central Islip, New York